Field *vs.* Price.

---

JOHN D. FIELD, JR., administrator, plaintiff in error, *vs.* WILLIAM P. PRICE, defendant in error.

1. Whilst, as a general rule, the principal alone can sue on a contract made by an agent, for the benefit of the principal, yet, if the agent himself have an interest in the contract, he may sue upon it in his own name.

2. In this case the contract clearly includes the Sisson *fi. fa.*, as one of the debts agreed to be paid out of the proceeds of the land.

3. Where there have been two judgments of the Court, on illegalities to an execution, both ordering the same to proceed as a valid execution, it is too late for the defendant to set up a new defense to the execution which existed before the judgments and of which he was fully informed at the time of the judgments.

Principal and agent. Illegality. Judgment. Before Judge KNIGHT. Lumpkin Superior Court. April Term, 1873.

Field, as administrator of D. H. Mason, deceased, brought complaint against Price upon the following note:

"GEORGIA—LUMPKIN COUNTY.

"Twelve months after date, I promise to pay to John D. Field, Jr., administrator of D. H. Mason, deceased, or bearer, $300 00, with interest from date, for value received, it being purchase money for two lots in the town of Dahlonega, Georgia, lying opposite to and east of the residence of Colonel William Martin, deceased, late of said county, containing one acres more or less, this note to operate as a mortgage lien upon said lots until the money is paid, subject to foreclosure.

"Witness my hand and seal, this 1st, day of January, 1868.
"Attest:              (Signed)      W. P. PRICE. [L.S.]
    "N. F. HOWARD.
    "W. A. BURNSIDE, Ordinary."

The defendant pleaded as follows: That a written contract was entered into between the plaintiff and this defendant, as attorney for the plaintiff, in certain executions against the Dahlonega Tanning and Leather Manufacturing Company, of which plaintiff's intestate was a stockholder; that the lien of said executions should be released as against the property of said intestate, and one of them in favor of the administrators of Charles B. Sisson, deceased, be levied upon the property of W. B. Wofford, another stockholder; that the lands of plaintiff's intestate should be duly sold at administrator's sale and be bid off by Wier Boyd, Esq., as agent and trustee for both parties, with authority to dispose of said property at

Field *vs.* Price.

private sale, and to retain a sufficient amount to pay off said execution, including the one in favor of the administrators of Sisson, deceased, should it not be satisfied out of Wofford's property; that the said agreement was not to prejudice the rights of either party upon the trial of the issue formed upon an affidavit of illegality filed to said Sisson execution, then pending in Lumpkin Superior Court; that the note sued on was given for land belonging to plaintiff's intestate, purchased at administrator's sale, by said Boyd, as trustee, as aforesaid, and sold by him to this defendant, with the understanding that the money, when due, should be paid on the Sisson execution, provided it was not satisfied out of Wofford's property, and provided the affidavit of illegality, filed thereto, was not sustained, neither of which contingencies happened ; that defendant is ready to pay the money due on said note, to the Sisson execution, but the plaintiff refuses to carry out his said agreement; that the estate of Mason is insolvent, as are also the plaintiff and the sureties on his bond.

Prayer, that the verdict and decree be so moulded as to cause the money due on said note to be paid according to the terms of said agreement.

The evidence for the defendant made substantially the case set up in the plea.   It further appeared that the illegality to the Sisson execution had been dismissed; that a motion to open the judgment upon which it was based was also made and dismissed, and that the execution in both instances was ordered to proceed.

The plaintiff sought to prove an agreement anterior to said illegality and to said motion to open the judgment, by which said execution was released as against the estate of Mason, deceased.   The evidence was excluded and the plaintiff excepted.

The jury found a verdict for the plaintiff for the amount of the note sued on, and ordered that when paid it should be credited on the Sisson execution.   A decree was entered accordingly.

The plaintiff moved for a new trial upon the following grounds, to-wit:

1st. Because the Court erred in refusing to charge the jury as follows: "The plea and set-off filed by the defendant in this case cannot be sustained, because the claim he sets up is in the right of a third person against the plaintiff, and not in favor of said defendant."

2d. Because the Court erred in excluding the testimony above referred to.

The motion was overruled and the plaintiff excepted upon each of the grounds aforesaid.

WIER BOYD, for plaintiff in error.

W. P. PRICE; H. P. BELL, for defendant.

McCAY, Judge.

1. Whilst it was the settled rule at common law that an agent who made a contract for his principal could not sue upon it in his own name, yet the rule had exceptions. One of these was, that if the agent had an interest, as for commissions, etc., he might sue on the whole contract in his own name. A judgment upon it in such a suit, where the agent acts for both himself and the principal, binds both: See 1 Chitty on Pleadings, page 7, and cases cited. Here the contract is with Price, naming him as the agent. Price clearly has an interest. He was employed by the principal to collect. He has, therefore, *prima facie* commissions. But he is specially interested, because, unless he can save this money, he may be liable to his principal for it. We think, therefore, that Price might file this plea—a *quasi* bill in equity—which he may do under our practice of mingling law and equity.

2. We are clear, too, that a fair construction of the written agreement includes the Sisson *fi. fa.* as among those which were to share in the proceeds of the lots, should it fail to be satisfied out of Wofford. Indeed, we do not see how any other meaning can be put on the words used in the agree-

ment. The special provision for the payment of the other *fi. fas.* out of the first money is rather in furtherance of, than contrary to, this view, since, if they were to be first paid, the indication is pretty clear that *something* was to be second. And as, by the terms of the agreement, the Sisson *fi. fa.* was to be used with the hope of getting the money to pay it out of Wofford's property, the inference is strong that if this hope failed, it, the Sisson *fi. fa.*, was to be the second referred to. We do not think Mr. Price's testimony is in conflict with the note. He testifies only that the note was given for the land. He shows that Boyd bid off the land, as the written agreement provided; that *he* bought the land afterwards from Boyd, and gave this note, payable to the administrator, for the purchase money. All this testimony proves is, that this note represents the proceeds of the land sold under the agreement. It does not contradict the note; it only undertakes to identify the consideration for which it was given, and to fix it as part of the proceeds, which, by the written agreement, was to be disposed of in a particular way. This plea sets up no off-set. It does not claim that the note shall be met by the *fi. fa.* and declared satisfied; nor have the jury so found. They have, in fact, found for the plaintiff the principal and interest on the note, but they have, as a Court of equity, directed that the money, when collected, shall be paid to and be credited on the Sisson *fi. fa.* We think the verdict was right. The plea is an equitable defense. Price, as the agent of the plaintiffs in the *fi. fa.*, and for himself, might have filed a bill to stop this fund and have it paid to the plaintiffs in the *fi. fa.*, according to the agreement. His interest justifies him in doing this, and the case is to be looked at as though these plaintiffs had, in fact, filed a bill for this purpose. The verdict is just such a verdict as ought to have been found on such a bill.

3. For the same reason, the charge of the Court, as to the effect of the several judgments and orders of the Court, is not illegal. In this trial, Price acts for himself and his principals. He stands on their rights, and the jury were to try

the case as though these principals were parties. Surely, the administrator, Field, who made the contract to which Lester and Brown testify, cannot now set up this agreement after he has suffered two judgments overruling illegalities filed by him, and after he has permitted this order reserving the lien of the Sisson *fi. fa.* He is estopped, after contending for ten years against the *fi. fa.*, and after twice suffering judgments ordering it to proceed, from setting up a defense which he knew all the time existed, and which he did not assert. To allow this to be done is trifling with the time and patience of the Courts. And if the evidence, as it did, showed such judgments to have been rendered, it was not improper for the Judge to tell the jury that they were of far stronger weight than parol evidence. He might have gone further and said they were conclusive; that they settled the question as to the validity of the *fi. fa.* at the time they were rendered.

Judgment affirmed.