24773. WILLIAMS *et al v*. NEAL. .

Decided January 9, 1936. Rehearing denied February 7, 1936.

*Smith, Smith & Bloodworth,* for plaintiffs in error.

*J. Ira Harrelson, Lee Douglas,* contra.

SUTTON, J. 1. Where the evidence, on the trial of an action brought by an insured against certain insurance agents alleging fraud in delivering to him a policy of automobile liability insurance in a company that had ceased to exist and was not authorized to do business in Georgia, showed that the agents knew the facts at the time the policy was issued and delivered to the plaintiff and he paid the premium therefor, that they did not inform the insured that the company in which his policy was written no longer existed and had been taken over by a reinsurance corporation that had agreed to assume all outstanding policies and claims of the former, and showed that on a claim arising under such policy against the plaintiff the defendants informed him that everything would be all right and the claim would be taken care of but still did not inform the plaintiff of the fact that while his policy appeared to be in a certain company such company had ceased to exist, had conveyed all its assets to another company and that this latter company had agreed to reinsure all policies and pay all claims of the former, and where the evidence showed that the plaintiff had to defend an action brought against him on this claim, which resulted in a judgment against him, and where the evidence showed that no rider or endorsement was ever attached to the plaintiff's policy and that he found out the true facts only on investigation sometime after the accident and report, the judge did not err in charging, when requested by the foreman of the jury as to when one insurance company takes over another, does the law provide that any rider or endorsement shall be attached to the old policy immediately thereafter, that there was no law to that effect, that this is one of the plaintiff's contentions as being fraud, that the jury could take that circumstance into consideration with all the other facts and circumstances shown by the evidence and determine the issues in the case, whether or not there was fraud in the issuance of the policy sued on and damage therefrom to the plaintiff. Nor was there error when the jury then retired and were recalled by the judge, who recharged them as to the law of fraud and proof thereof in response to a request there-

for, and the judge further stated as to whether or not there should be a. rider on the policy sued on, that they could consider the evidence or the lack thereof along with other evidence in the case in determining the issues. While fraud must be proved and is not to be presumed, it is in its nature subtle, and may result from slight circumstances in misrepresentations of facts and concealment of the true facts, particularly when the party claiming to have been damaged by the fraud was justified in imposing confidence in the other parties, believing that they were acting in good faith and concealing nothing from him. The plaintiff in this case testified that if he had known that the defendants were issuing to him a policy in a company that had ceased to exist and had been taken over by another company, which had agreed to reinsure all policies of the first company, he would not have accepted the policy and paid the premium therefor to the defendants.

2. While this suit was not predicated solely on violation by the defendants of sections 56-501, 56-502 of the Code, to the effect that when any agent delivers to an insured a policy of insurance in a company that is not authorized to do business in this State and collects the premium therefor, he shall be personally liable to the holder of the policy, but was primarily a suit against the agents for damages on account of fraud in the delivery to plaintiff of the policy, still under the allegations of the petition and the facts in evidence, the judge did not err in charging that "the plaintiff further says that the defendant, S. C. Williams (the local agent that wrote and issued the policy referred to and to whom the plaintiff paid the premium), is liable in this case by reason of the fact that he, as agent, sold a policy in an insurance company which was purportedly doing business in the State of Georgia without having been properly licensed to do business as such. And in that connection . . the law requires every insurance company, before it is authorized to do business in Georgia, shall apply for and have issued to it a license to said company to transact business in this State and must also file a statement with the insurance commissioner of the State of Georgia and the said statement and license must be renewed annually on the first day of January, or within 60 days thereafter, and must show what the condition of said company was on the 31st day of December, and the agent will become liable who writes the policy, if he writes a policy for a

company which is not authorized to do business in this State and has not received a license as required by the law." The requirements stated in this charge are statutory (Code, §§ 56-402, et seq.) and the evidence in this case showed that the company in which this policy was written had not renewed its license and filed the statement above referred to for the year 1933, the year in which the policy was written and delivered. The jury could consider a violation of these statutory requirements in determining whether the defendant Williams had been guilty of the intentional fraud charged by the plaintiff.

3. The verdict for $2150 was not grossly excessive and unreasonable because the evidence failed to disclose that the plaintiff had suffered any pecuniary damage or loss whatsoever as the result of any alleged tort of the defendants. There was evidence that defendants were notified of the claim against the plaintiff, and although they assured him they would take care of the matter, the plaintiff had to employ counsel to defend the action, expending $150. While the evidence shows that plaintiff had not paid the judgment of $2000 obtained against him, it does show that the $2000 damage claim against him was a claim covered by said policy which plaintiff held and that he is liable to the plaintiff in the damage suit for the amount of that judgment against him. Plaintiff could maintain this action and recover the amount of this judgment although he had not paid it. See *Kitchens* v. *Ryner,* 8 *Ga. App.* 587 (69 S. E. 1086).

4. The evidence supported a verdict for the plaintiff. The following facts appear: The insurance company purporting to have issued the policy merged with or was taken over by the reinsurance corporation on October 31, 1932. The policy was issued to the plaintiff and delivered by Williams on January 12, 1933. The plaintiff paid the premium and the defendants Williams and Hurt & Quin, Inc., received the proceeds. The defendants were local and general agents respectively of the insurance company that had gone out of business and occupied the same status with the reinsurance corporation. The reinsurance corporation agreed to assume all policies of and claims against the first company. On February 8, 1933, plaintiff ran into and injured Lizzie Smith. On February 10, 1933, he notified the defendants and they promised to take care of the matter. They failed so to do. On May 13,

1933, Lizzie Smith filed suit against plaintiff for damages and obtained judgment against him for $2000. Neither the agent writing the insurance nor any of the defendants informed the plaintiff that the insurer in the policy delivered to him had gone out of business and that such reinsurance corporation had taken over its business. The plaintiff did not find out about this until sometime after the accident, about April 25, 1933, and when he informed the defendants that he understood the insurer had gone out of business, they stated that that was all right, the general agent had on hand sufficient funds of the insurer to pay the claim against the plaintiff and would pay the same. It appears that the reinsurance corporation was apparently solvent at the time it took over the assets of the insurance company but that it failed about April 20, 1933. The plaintiff testified that he would not have paid the premium and accepted the policy had he known at the time that the purported insurer was not actually in business and that another company had agreed to take over its policies and pay its claims. There was no rider or endorsement of the fact that the policy held by the plaintiff had been reinsured by the reinsurance corporation attached thereto.

5. The plaintiff's petition set out a cause of action against the insurance agents; and he having added certain amendments, the judge did not err in overruling the demurrers. The court did not err in overruling the motion for new trial.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*