## 27690. STEVENS *et al. v.* HUNT.

DECIDED DECEMBER 5, 1939.

*J. G. Stovall, T. R. Burnside,* for plaintiffs.
*Randall Evans Jr., Jack D. Evans, James R. Evans,* for defendant.

STEPHENS, P. J.  C. F. Hunt sued B. J. Stevens, Starkey Flythe, and Paul Chance, alleging in his petition that the defendants were indebted to him in the sum of $65, which sum represented the premium on a certain surety bond written at the request of and charged to the defendants, the original premium being $80, but the cancellation having been effected with a credit of $24, leaving $56 as principal and having earned $9 as interest from September 10, 1935, to October 1, 1937.  The defendants filed general and special demurrers.  The plaintiff amended the petition alleging that on August 10, 1935, the defendant Stevens requested him to come to his office; that he complied with this request and found at the office the other two defendants; that Stevens, who is an attorney at law, told the plaintiff that he and the other defendants had earned a fee in a case which would net them several thousand dollars, but in order to collect the fee it would be necessary for Flythe to be appointed guardian for Violet Fouts, and to give a surety bond as guardian, and that, inasmuch as the plaintiff wrote such bonds, the defendants were desirous of having the plaintiff write such a bond in the amount of $18,000; that the plaintiff advised Stevens that he could not write such a bond on credit, as Flythe was unknown to him, as well as the estate and person for whom Flythe was to be appointed as guardian; that Stevens, in the presence of Flythe and the defendant Chance, assured the plaintiff that it was the intention of the three lawyers, Stevens, Flythe and Chance, to pay for the bond, and that they would pay for it within thirty days; that Flythe acquiesced in this statement by saying nothing to the contrary, that the plaintiff stated he would write the bond, not on credit for the ward or estate or Flythe as guardian, but on the credit and the promise of the three defendants to pay for the premium within thirty days; that the plaintiff wrote the bond in United States Fidelity & Guaranty Company, at the charge of $80 per year as premium, which was then due and payable in advance, subject to the agreement between the parties to wait thirty days for payment, the bond being written as a surety bond for Flythe as guardian of Fouts, but to be paid for by Flythe, Stevens and Chance; that the amount due by the defendants on February 14, 1936 (provided another surety had been substituted), was $56 with interest at 7% from September 10, 1935, but the defendants had not substituted another surety in lieu of United

States Fidelity & Guaranty Company, and under the terms of the order and of the law this bond is still in force and will remain in force until a new surety is substituted or the guardian finally discharged, and consequently the defendants are indebted to the plaintiff on this bond at the rate of $80 per annum for the first twelve months from and after August 10, 1935, and at the rate of two thirds of the annual premium of $80 (which amounts to $53.33 per annum) for the first twelve months, and the entire amount due to August 10, 1938, is $186.66 with 7% interest; that at the time of filing the original petition the plaintiff did not know that no substitute surety had been added, and therefore erroneously concluded that the amount due was only $56 with interest; that the plaintiff's agency for United States Fidelity & Guaranty Company included the sales of bonds and collection for same; that the plaintiff is bound to collect for all bonds sold by him, and it is his duty in turn to collect from the person or persons to whom bonds are sold; that the plaintiff has paid the company the $56 sued for in the original petition, but the balance accrued since that time has not been paid for, but is an indebtedness held by the company against the plaintiff; and that the defendants are indebted to the plaintiff individually both for the $56 and the amounts subsequently accrued. The plaintiff prayed to recover the $56 and an additional $130.66 which had become due by reason of the defendants' failing to substitute another surety, and all premiums due after August 10, 1938, until the termination of this suit, or until a new surety is substituted, at the annual premium rate of $53.33.

The defendants renewed their demurrers to the petition as amended and further demurred on several grounds, including the ground that the plaintiff's petition as amended did not specifically set forth any oral agreement on the part of the defendants to become personally and individually liable for the payment of a bond for this estate, and did not show any reason or consideration for the defendants' becoming individually liable for the debt properly chargeable to the estate; and that the plaintiff had failed to attach a copy of the bond or the application therefor, and that it was not alleged how the plaintiff became liable to the surety company for the uncollected premiums or how and upon whose authority he made the alleged payment of $56 to the company for the account of

these defendants, and that the debt sued on was unenforceable under the statute of frauds. The court overruled the demurrer to the original petition, and also the demurrers to the petition as amended. The defendants excepted to the overruling of their demurrers both general and special.

As to the amount of the premium paid by the plaintiff agent to the bonding company on the bond written for the guardian, and which the defendants contracted with the plaintiff to write, agreeing to pay the premium therefor, the plaintiff could properly maintain an action in his own name to recover the amount of the premium from the defendants. The plaintiff became subrogated to the right of the bonding company. When a bonding company looks to its agent for the premium on a bond written by him the agent is the owner of the debt arising by his extending credit for the premiums, so that on payment thereof he is subrogated to all rights of his principal in the premiums, entitling him to sue therefor, and no assignment is necessary to enable him to recover. 2 Cooley's Briefs on Insurance (2d ed.), 1512; 3 Couch Cyc. Inc. § 556; 33 C. J. 67; Cobb v. Keith, 110 Ala. 614 (18 So. 325); Gillett v. Ins. Co. of North America, 39 Ill. App. 284; Harrison v. Birrell, 58 Ore. 410 (115 Pac. 141), and cit.; Goldwasser v. Boonshaft, 209 Mo. App. 115 (237 S. W. 825); Just v. Herry (Tex. Civ. App.), 174 S. W. 1012. See also notes, 83 A. L. R. 107, and *Montgomery &c. Ins. Co.* v. *Security Mortgage Co.,* 45 Ga. App. 693 (166 S. E. 60).

Under some circumstances the agent may recover a premium from the insured even though he has not actually paid the premium to the company. U. S. Shipping Board Emergency Fleet Cor. v. Sherman, 208 Ala. 83 (93 So. 834); Ward v. Tucker, 7 Wash. 399 (35 Pac. 126, 1086); 33 C. J. 67. The plaintiff alleges that the bond remained in force and that the defendants remained liable for the premiums thereon until a surety was substituted for the plaintiff's principal on the bond, which had not been done. It appears that the plaintiff did not pay the amount of the accrued premiums to the bonding company other than the first premium as above stated, but that under his agency for the bonding company he was bound to it to collect for all bonds sold by him, and it was his duty to collect from the persons to whom the bonds were sold, and that the balance due on the bond in this case was an indebted-

ness held by the bonding company against him. He further alleged that the defendants were indebted to him individually for the premium paid by him and for the premiums accrued which he had not paid but for which he was liable to the company.

"Generally an agent shall have no right of action on contracts made for his principal. The following are exceptions: . . 5. In cases of agency coupled with an interest in the agent, known to the party contracting with him. In all these cases, payment to the principal before notice of the agent's claim is a good defense." Code, § 4-404. It is contended by the defendants that there is clearly no liability on their part for the accrued premiums, as the plaintiff has not paid such premiums to the company, and that it does not appear that he has any interest in the subject-matter of the suit. It appears from the petition that the plaintiff not only was charged with the duty of collecting these premiums of the defendants, but that he is liable to the bonding company therefor. In *Field* v. *Price*, 50 *Ga.* 135, the court said: "Whilst it was the settled rule at common law that an agent who made a contract for his principal could not sue upon it in his own name, yet the rule had exceptions. One of these was, that if the agent had an interest, as for commissions, etc., he might sue on the whole contract in his own name. . . Here the contract is with Price, naming him as the agent. Price clearly has an interest. He was employed by the principal to collect. He has, therefore, prima facie commissions. But he is specially interested, because, unless he can save this money, he may be liable to his principal for it." In Waters *v.* Wandless (Tex. Civ. App.), 35 S. W. 184, it was ruled: "An insurance agent, who is charged with and becomes liable to the company for the premiums on policies issued by him, may sue for the premium in his own name."

The plaintiff clearly has an interest in these accrued premiums. He was employed by the principal, the bonding company, to write or sell bonds for it, and to collect the premiums therefor from the persons for whom the bonds were issued, remaining liable to the company for the premiums until they are paid by the insured. The plaintiff, presumably, was entitled to commissions. Therefore, the plaintiff could maintain this action to recover of the defendants the amount of these accrued premiums, for which he is liable to his principal, although it appears that he has not paid these

premiums to his principal, the bonding company. See *Williams* v. *Neal*, 52 *Ga. App.* 553 (3) (183 S. E. 650).

The debt sued on is not unenforceable under the statute of frauds.

Applying the above principles, the petition as amended set out a cause of action, and the court properly overruled the defendants' demurrers thereto.

*Judgment affirmed. Sutton and Felton, JJ., concur.*